UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
**************************************************
BERK UCAR ,                              *
              Plaintiff                  *
                                         * CIVIL NO.
VS.                                      *
                                         *
DEPARTMENT OF TRANSPORTATION*
FOR THE STATE OF CONNECTICUT  *
JAMES MCCANN AND RABIH        *
BARAKAT, JON HAGERT AND SCOTT *
HILL, in their individual capacities  *
              Defendants      * MAY 28, 2014
**************************************************
```

## COMPLAINT

<u>FIRST COUNT</u>: [42 USC § 2000e, <u>et seq</u>.]

1.      This is an action for money damages to redress the deprivation by the defendant, through its agents, servants and/or employees, of the rights secured to the plaintiff by the Constitution and laws of the United States.  Defendant, through its agents, servants and/or employees, were responsible for violating plaintiff's federal statutory rights, and thereby improperly deprived him the freedom and liberty afforded to all citizens of this State and Country, without any cause, justification or excuse.

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343(3), as well as 42 U.S.C. §§1981, 1983 and 2000e, <u>et seq</u>.

3.      During all times mentioned herein, the plaintiff, Berk Ucar ("plaintiff" or "Ucar"), resides within the State of Connecticut, County of Hartford, City of New Britain.  The plaintiff is Caucasian of race, Muslim of religion and his national origin

and ancestry is Turkey.

4.     At all times mentioned herein, the Department of Transportation ("DOT" or "defendant"), is an agency which has a stated mission of providing a safe, efficient and cost-effective transportation system to the general public which is designed to meet the needs of its users.  DOT employs well over 500 persons within the State of Connecticut and is located at 2800 Berlin Turnpike in Newington, Connecticut.

5.     The co-defendant, James McCann ("McCann") was and is a Supervising Engineer at the defendant facility and is being sued in his  individual capacity.  McCann is white of color, Caucasian of race, American born and non-Muslim.

6.     The co-defendant, Rabih Barakat ("Barakat") was and is a Principal Engineer of the Bridge Design Unit at the defendant facility and is being sued in his individual capacity.  Barakat is white of color, Caucasian of race, American born and non-Muslim.

7.     The co-defendant, Jon Hagert ("Hagert") was and is a Supervising Engineer at the defendant facility and is being sued in his individual capacity.  Hagert is white of color, Caucasian of race, American born and non-Muslim.

8.     The co-defendant, Scott Hill ("Hill") was and is the Manager of Bridge and Facilities and is being sued in his individual capacity.  Hill is white of color, Caucasian of race, American born and non-Muslim.

3

9.      In or about 2007, the plaintiff became employed at the DOT as a Civil Engineer and his direct supervisor was McCann.

10.      On December 18, 2012 and February 13, 2013, respectively, investigatory Fact Finding hearings were held, as well as a Loudermill hearing on April 23, 2013, all concerning alleged abuse of state time by the plaintiff.

11.      The plaintiff was wrongfully accused of logging into work and then leaving to go to the gym.  Amazingly, some of the days/times in which the plaintiff was accused of abusing time were on the weekends and days he was **not at work**. Moreover, other similarly-situated employees, who were American-born and non-Muslim, were permitted to spend time at the gym in the morning without being disciplined for it, all the while on state time.

12.      The plaintiff was harassively issued a sixty (60) day suspension as a result of the DOT's accusation regarding abuse of state time.  Plaintiff's Union Representative, Joanna James, believed this discipline to be excessive, particularly because the DOT claims to adhere to a policy of progressive discipline.

13.      Barakat, Principal Engineer of the Bridge Design Unit, surreptitiously instructed Mei Wong ("Wong"), who was a Transportation Engineer 3, to follow and closely monitor plaintiff's day-to-day work activities,  personal breaks and free time. In fact,  Wong admitted at a subsequent Fact Finding hearing on May 14, 2013, that she was doing a favor for her boss and kept a clandestine record of plaintiff's time. Significantly, Wong has **never** indicated to anyone at the DOT that the plaintiff abused state time.

14.      At the May 14, 2013 Fact Finding hearing,  it was openly discussed

4

that Ucar was being treated as if he was a Terrorist. For example, Hill, the Manager of Bridge and Facilities, made references to the Boston Bombings and September 11th while talking about the plaintiff. He also recklessly and maliciously made a statement saying that "...Berk has a bag, don't know what's in the bag". Barakat also said things like "in wake of Boston bombings" and "...since Boston Marathon things have gotten heightened". Wong also referred to "Boston Bombing" and what could happen. Lastly, Hagert, Supervising Engineer, also made references to Boston Bombings, as well as mentioning the plaintiff's "Gym bag [and it's]...heavy clunk". Hagert also admitted that he had also spied on plaintiff and cracked the door so he could watch him when he went to fill his water bottle.

15.    On September 7, 2012, the plaintiff was involved in an automobile accident in which he was rear-ended while in a state car. McCann, as well as others, knew about the accident, but did not want plaintiff to discuss the accident or resulting injuries with anyone, and in fact, prohibited him from talking about it. It was four (4) months later before he would be sent the paperwork concerning his making a workers' compensation claim. At the Fact Finding hearing on December 18, 2012, McCann admitted that he failed to file the documentation concerning the plaintiff's workers' compensation claim, despite the fact that he was on full notice about the accident.

16.    The aforedescribed campaign of harassment by McCann against the plaintiff began in September 2010. McCann has even vindictively accused the plaintiff of being a "cheater", as well as a "thief", because he took medical leave to go to a medical appointment. McCann continually mocks Ucar's English and tells

him his work is "poor" in front of his co-workers, which in turn completely isolates him within the workplace.

17.     At the Fact Finding hearing on December 18, 2012, Michael Masayda ("Masayda") said he saw plaintiff on November 26th, going in the gym as he was leaving it, although, curiously he admitted he had never met the plaintiff before. Masayda claimed he saw plaintiff doing specific exercises in the gym, but yet when Ucar entered the gym, Masayda was leaving.   Barakat's documentation says Masayda saw plaintiff at the gym on November 21st and November 22nd, one of which days plaintiff was not even at work.

18.     At a follow-up Fact Finding hearing on February 13, 2013,  Hill and Barakat admitted to the plaintiff they had enlisted other employees within the DOT to spy on him and follow him around.  Hill also indicated they would direct events or things that happened against him in any way they desired.   Hill also plainly stated that  if Ucar did not simply accept the baseless accusations brought against him, they would find additional witnesses to corroborate them.  These so-called witnesses were never produced at any Fact Finding hearing.

19.     Plaintiff was the only employee in his Unit who was told to start work at 7:00; everyone else came in at 7:30 or 7:40, including his supervisor, McCann, who normally did not start work till after 8:10 or so.   Other similarly situated employees who were American-born and non-Muslim have been permitted to leave the building to go to the cafeteria or smoke a cigarette, without the necessity of recording time off.  Frankly, before and after work, as well as plaintiff's lunch hour, is his own personal time and what he does during these periods should have no

bearing whatsoever on his daily work schedule, or his overall job performance.

20.     The defendant, through its agents, servants and/or employees, claims its employees feel threatened and intimidated by Ucar and afraid for their lives. Numerous DOT employees have made references to the Boston Bombing and September 11th when speaking of the plaintiff with absolutely not one shred of evidence to support their baseless, defamatory accusations suggesting that the plaintiff is somehow involved in terrorist activities.

21.     The defendant, through its agents, servants and/or employees, has gone so far as to accuse the plaintiff of engaging in nefarious conduct as it relates to the backpack he carries to work every day.  The defendant's agents, servants and/or employees have followed him around, keeping track of his whereabouts and his comings and goings throughout the course of the day and singled him out concerning time spent at the gym.

22.     Other similarly situated employees, who are American born and non-Muslim, have been permitted to go to the gym before work, and yet plaintiff was told he has to be at work at an earlier time than the rest of his co-workers.  If it were not for Ucar's national origin, religion, ancestry, mental and/or physical disabilities, he would not be treated in the manner he has been.

23.     The reason plaintiff goes to the gym is because he was injured in an automobile accident while driving a state vehicle while on state time as aforementioned.  It should be noted that although the DOT was made aware of his workers' compensation claim, it, through its agents, servants and/or employees, discouraged Ucar from talking about it and/or making any claims concerning his

injuries.

24.    The DOT, through its agents, servants and/or employees, have engaged in an active campaign of discriminating, harassing and fostering a hostile work environment against the plaintiff, due to his national origin, religion, ancestry, as well as his mental and physical disabilities.

25.    In addition to the foregoing, the actions herein complained of by the plaintiff as against the defendant, because of the acts of its agents, servants and/or employees, constituted blatant discrimination, disparate treatment, harassment and a hostile work environment.  Other American born, non-Muslim employees who were and are similarly situated to the plaintiff, have never been subjected to the harassment, hostile work environment, and/or disparate treatment visited upon the plaintiff by the defendant, through its agents, servants and/or employees.

26.    The demeaning and harrasive conduct of the agents, servants and/or employees of the defendant towards the plaintiff, in juxtaposition to their treatment of other American born, non-Muslim employees, and who may have suffered work-related injuries either mental or physical, constitutes disparate, discriminatory treatment and, accordingly, was and is illegal.

27.    The actions of the defendant, through its agents, servants and/or employees, in creating and maintaining a hostile work environment, caused the plaintiff to suffer severe emotional, psychological, financial, physical and emotional injuries and damages stemming from the wrongful acts of the defendant's agents, servants and/or employees as aforecited, all to his permanent detriment and loss.

28.    In response to the aforedescribed conduct by the defendant, through

8

its agents, servants and/or employees, on or about June 14, 2013, Ucar availed himself of the administrative procedures created pursuant to state and federal law known as the Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunities Commission ("EEOC"), respectively, by filing a Complaint Affidavit.   A Release of Jurisdiction was received from both agencies on March 11, 2014 and April 9, 2014, respectively.

29.     The plaintiff has satisfied all statutory conditions precedent to bringing the instant action by exhausting all applicable administrative remedies.

30.     The aforedescribed conduct of the defendant, through its agents, servants and/or employees, were motivated, at least in substantial part, by plaintiff's religion which is Muslim, his national origin and ancestry which is Turkey and his mental and physical disabilities.

31.     The acts of the defendant, through its agents, servants and/or employees, violated the plaintiff's Fifth and Fourteenth Amendment rights to be free from deprivation of liberty without due process of law; his Fourteenth Amendment right to due process of law, as well as to his right to be afforded equal protection and benefit of law, all in violation of 42 U.S.C. Section 2000e, et seq.

SECOND COUNT:   [Americans with Disabilities Act 42 U.S.C. §12101, et seq.]

1-30.   Paragraphs 1 through 30 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 30 of the Second Count, as if fully set forth herein.

Case 3:14-cv-00765-JCH   Document 1   Filed 05/28/14   Page 9 of 15

9

31.    In addition to the foregoing, the actions herein complained of by the plaintiff as against the defendant, because of the acts of its agents, servants and/or employees, were as a result of his physical condition related to his car accident, and his mental disability stemming from a high level of stress caused by his hostile work environment, which in whole or in part is in the nature of a mental and/or physical disability.

32.    The plaintiff's harassment by the defendant's agents, servants and/or employees was a result of discriminatory treatment in violation of the Americans with Disabilities Act, 42 U.S.C. Section 12101, et seq, insofar as he has been continually harassed on the basis of his disabilities and because of the defendant, through its agents, servants and/or employees' perception of the plaintiff as having various disabilities.  Indeed, plaintiff was required by his psychiatrist to be out of work for two (2) weeks due to his depression, emotional distress and anxiety, all brought on by the high level of stress created by his hostile working environment.

THIRD COUNT:   [Retaliation]

1-30.  Paragraphs 1 through 30 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 30 of the Third Count, as if fully set forth herein.

31.    In April of 2013, Hill ordered that plaintiff's desk be moved to an isolated portion of the Unit, namely the facilities design area, as others within the Bridge Unit felt uneasy in his presence.  In fact, plaintiff was told to completely avoid going to the Bridge Unit of DOT.  Moreover, plaintiff was told he could no longer

10

communicate with anyone from the Bridge Unit.

32.    On August 30, 2013, Hagert, Barakat and Hill specifically told plaintiff that he could not leave due to their giving him a service rating.  Plaintiff asked for union representation which was not forthcoming and then asked if he could leave. Hill ordered plaintiff not to leave.  Feeling threatened, plaintiff called the State Police.  Ucar was shaking and nervous due to the demeaning and threatening manner in which he was being spoken to and threatened by his supervisors.

33.    On or about August 30, 2013, the plaintiff received a five (5) day suspension without pay, effective from September 30th  through October 4th for an alleged violation of "Usage of State Time, Equipment and Supplies."  This is evidence of the defendant's continued campaign of harassment and retaliation against Ucar for his making a Complaint opposing discrimination in the workplace. Ever since plaintiff filed his Complaint Affidavit on June 14, 2013, the defendant, through its agents, servants and/or employees, has continued to harass and retaliate against the plaintiff with no good reason, creating an isolated and hostile work environment.

34.    Further, on or about September 12, 2013, the plaintiff received an unsatisfactory service rating, again in retaliation for the complaints he has made in opposition to the discrimination and harassment he has experienced at the hands of co-workers, supervisors and managers.  He has never been given an unsatisfactory service rating prior to filing his Complaint Affidavit against the DOT. In point of fact, for the two (2) years preceding the filing of his Complaint Affidavit, he did not receive a service rating at all.

35.    The service rating plaintiff received was actually for six (6) months, not for twelve months, but was deceptively revised to purport to cover the entire annual review period.

36.    Due to the unsatisfactory service rating plaintiff received, he was denied a normal 3 to 4% annual increase, as well as a promotion to the position of Transportation Engineer Three.

37.    Due to the aforedescribed extremely hostile work environment, plaintiff has had to make numerous complaints to the DOT's Affirmative Action office, and as a result has also experienced retaliation.

38.    The plaintiff has been subjected to a hostile work environment, disparate treatment and retaliation because of the fact that he has openly opposed discrimination in the workplace relative to his religion, national origin, ancestry and disabilities, both physical and/or mental.

39.    As a direct result, and in retaliation for plaintiff's filing Complaints with the DOT's Affirmative Action Office and with the CHRO and EEOC, he is now being constantly subjected to disparate treatment, harassment, a hostile work environment and the threat of termination.

40.    But for the plaintiff having participated in the aforementioned protected activity of filing complaints with the DOT's Affirmative Action Office, the CHRO and the EEOC, he would not have been treated in the harassive and discriminatory and hostile manner as he was and continues to be.

41.    The actions of the defendant, through its agents, servants and/or employees, as manifested by the ongoing harassment of the plaintiff, as well as the

12

disparate treatment afforded him in relation to other similarly situated American born, non-Muslim employees, amounted to selective discriminatory employment practices perpetrated against the plaintiff, which constitutes clear and unequivocal retaliation, in violation of 42 U.S.C. §2000, as defendant's actions were due to plaintiff's engagement in protected activity.

FOURTH COUNT: (42 U.S.C. §§1981 and 1983)

1-30.  Paragraphs 1 through 30 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 30 of the Fourth Count, as if fully set forth herein.

31.     As previously indicated, on September 7, 2012, the plaintiff was involved in an automobile accident while in a state car.  Even though he reported the accident, he was prohibited from discussing the accident with anyone. McCann later admitted that he failed to file the necessary documentation concerning plaintiff's workers' compensation claim.

32.   Plaintiff was wrongfully accused of logging into work and then going to the gym thereby abusing state time, while other similarly situated employees were permitted to do the same thing.  Barakat even went so far as to instruct another employee, Wong, to monitor plaintiff's daily activities and report back to him.

33.   The harassive, discriminatory and retaliatory conduct of McCann, Barakat, Hagert and Hill set the tone for the rest of the staff within the Department to treat the plaintiff in the same harassive, demeaning, retaliatory and disparate fashion.  Other employees claimed to feel threatened and intimidated by plaintiff,

13

with no good faith basis.  Moreover, some of Ucar's co-workers started making references to plaintiff as being a terrorist.  Co-defendants McCann, Barakat, Hagert and Hill completely alienated plaintiff from the rest of the staff and as a result he felt isolated, unsupported, demeaned and depressed.

34.    The aforedescribed conduct of the co-defendants was motivated, at least in substantial part, by plaintiff's religion, which is Muslim, his national origin and ancestry which is Turkey, and his members and/or perceived disabilities.

35.    The discriminatory acts of the co-defendants McCann, Barakat Hagert and Hill as aforedescribed was done in their individual capacities in violation of **42 U.S.C. Section 1981**, and therefore, the defendant is liable to the plaintiff pursuant to § **42 U.S.C. § 1983** of the Civil Rights Act of 1991, as amended.

FIFTH COUNT:   [Conn. Gen. Stat. §31-290a]

1-30.  Paragraphs 1 through 30 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 30 of the Fifth Count, as if fully set forth herein.

31.    As previously indicated, on September 7, 2012, the plaintiff was involved in an automobile accident while in a state car.  Even though he following the proper procedure by reporting the accident, he was prohibited from discussing the accident with anyone. Co-defendant McCann later admitted that he failed to file the necessary documentation concerning plaintiff's workers' compensation claim.

32.    Plaintiff was in need of medical attention as a result of his injury from this accident and, therefore, would go to the gym in the morning, as did many of his

14

co-workers.

33.   Instead of following protocol for workers' compensation claims and filing his paperwork, defendant, through its agents, servants and/or employees, accused the plaintiff of abusing state time by utilizing the gym.

34.   Defendants' actions were in direct retaliation for him filing a work-related injury in violation of Connecticut General Statute §31-290a.

SIXTH  COUNT:   [Intention Infliction of Emotional Distress as Against McCann, Barakat, Hagert and Hill]

1-30.   Paragraphs 1 through 30 of the First Count are hereby incorporated by reference and made Paragraphs 1 through 30 of the Sixth Count, as if fully set forth herein.

31.  The co-defendants, McCann, Barakat, Hagert and Hill, during the course of taking the aforedescribed employment actions against the plaintiff, intended to inflict emotional distress upon him and knew, or should have known their discriminatory, harassing and retaliatory conduct would likely cause severe emotional distress.

32.  The aforedescribed conduct of the co-defendants, McCann, Barakat, Hagert and Hill, were extreme and outrageous and caused the plaintiff severe emotional distress and trauma, sleeplessness, loss of appetite, damage to his relationship with his family and friends, as well as damage to his self-esteem and sense of self-worth.

15

33. The aforedescribed acts of the co-defendants McCann, Barakat, Hagert and Hill constituted the intentional infliction of emotional distress.

WHEREFORE, the plaintiff claims judgment against the defendant and co-defendants as follows:

    a.    Compensatory damages in the amount of no less than One Million Dollars ($1,000,000.00);

    b.    Punitive damages as against the individual defendants;

    c.    Attorney's fees and the reimbursement of costs associated with the bringing of the instant action; and

    d.    Removal of all unfounded and baseless discipline discriminatorily imposed upon the plaintiff and presently existing in his personnel file;

    e.    Such other relief as this Court shall consider to be just, fair and equitable.

PLAINTIFF, BERK UCAR


BY:_____\s_____
    Law Office of
    W. Martyn Philpot, Jr., LLC
    409 Orange Street
    New Haven, CT  06511-6406
    Tel. No. (203) 624-4666
    Federal No. ct05747
    His Attorneys


The plaintiff hereby requests a trial by jury.

\employ\berk ucar\federal complaint