UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERK UCAR, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:14-CV-0765 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT OF | : | |
| TRANSPORTATION, et al., | : | MARCH 6, 2015 |
|     Defendants. | : | |

**RULING RE: MOTION TO DISMISS (Doc. No. 25)**

**I.      INTRODUCTION**

Plaintiff Berk Ucar filed an Amended Complaint (Doc. No. 24) on September 18, 2014.  In it, Ucar makes a number of claims against the Connecticut Department of Transportation (the "DOT") and four of its employees, James McCann, Rabih Barakat, Jon Hagert, and Scott Hill.

The defendants filed a Motion to Dismiss (Doc. No. 25) Counts Six and Seven of the Amended Complaint.  Count Six alleges that the DOT violated section 31-290a of the Connecticut General Statutes, which prohibits employers from discriminating against employees who file for workers' compensation benefits.  Count Seven alleges that James McCann, Rabih Barakat, Jon Hagert, and Scott Hill (collectively, the "individual defendants") intentionally inflicted emotional distress on Ucar.

For the reasons that follow, the court grants the Motion as to Count 6 and denies the Motion as to Count 7.

1

## II.     BACKGROUND[1]

The Amended Complaint alleges the following facts. Ucar is a Muslim. Am. Compl. ¶ 3. His national original and ancestry is Turkish. Id. Ucar became employed at the DOT as a Civil Engineer in or around 2007. Id. ¶ 9. James McCann, a Supervising Engineer at the DOT, was his direct supervisor. Id. ¶¶ 5, 9. Ucar's other co-workers at the DOT included Rabih Barakat, a Principal Engineer, Jon Hagert, a Supervising Eningeer, and Scott Hill, the Manager of Bridges and Facilities. Id. ¶¶ 6–8. All of the individual defendants are American-born and non-Muslim. Id. 5–8.

Sometime around September 2010, McCann began a "campaign of harassment" against Ucar. Id. ¶ 10. Specifically, McCann accused Ucar of being a "cheater" and a "thief" after Ucar took medical leave to go to a medical appointment. Id. McCann "continually mocked Ucar's English and repeatedly told [Ucar] that his work was 'poor' in front of his co-workers." Id.

In September 2012, Ucar was rear-ended while in a state car. Id. ¶ 11. The individual defendants knew about the accident but they "completely prohibited [Ucar] from talking about it." Id. It took four months for Ucar to receive paperwork related to submitting a workers' compensation claim. Id. McCann later admitted that he "failed to file the documentation concerning [Ucar's] workers' compensation claim." Id.

In November 2012, Barakat instructed Mei Wong, a Transportation Engineer, to "follow and closely monitor [Ucar's] day-to-day work activities, personal breaks and free

---

[1] The court accepts all factual allegations in the Amended Complaint as true for the purposes of a motion to dismiss. Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009).

time," and Wong later admitted that she had been doing a favor for her boss and had kept a "clandestine record of Ucar's time." Id. ¶ 12.

On December 18, 2012, and February 13, 2013, fact-finding hearings were held concerning allegations that Ucar had abused state time. Id. ¶ 13. A Loudermill hearing[2] was held on April 23, 2013. Id. At the hearings, testimony was offered to the effect that Ucar was seen at the gym during work hours. Id. Ucar was "falsely and maliciously accused of logging into work and then leaving to go to the gym." Id. In the February 2013 hearing, Hill and Barakat admitted to asking employees to spy on Ucar. Id. ¶ 18. In April 2013, the DOT issued a 60-day suspension to Ucar as a result of the accusations that he had been abusing state time. Id. ¶ 19. Ucar ultimately received a five-day suspension. Id. ¶ 31, at 11; see also Pl.'s Mem. Obj. (Doc. No. 30) at 3.

The DOT and its employees accused Ucar of "engaging in nefarious conduct as it relates to the backpack he carrie[d] to work every day." Id. ¶ 20. DOT employees claimed to have felt threatened and intimidated by Ucar. Id. At a fact-finding hearing held on May 14, 2013, "it was openly discussed that Ucar was being treated as if he were a Terrorist [sic]." Id. ¶ 21. Hill referenced the Boston bombings and the attacks of September 11, 2001, while talking about Ucar. Id. He stated, "Berk has a bag, don't know what's in the bag." Id. Barakat made statements like "in the wake of Boston bombings" and "since Boston Marathon things have gotten heightened." Id. Wong referred to the Boston bombings and appears to have expressed fear at what could happen in the future. Id. Hagert referred to the Boston bombings and mentioned that

---

[2] A Loudermill hearing is essentially a procedure to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed [disciplinary] action." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545–46 (1985).

Ucar's gym bag had a "heavy clunk." Id.  These individuals made these comments because Ucar was a Muslim of Turkish ancestry and national origin.  See id. ¶¶ 23–24.

Count 6 of the Amended Complaint alleges that the DOT violated section 31-290a of the Connecticut General Statutes by retaliating against him for filing a workers' compensation claim related to the car accident in which Ucar was involved.  Count Seven alleges that the individual defendants intentionally inflicted emotional distress on him.

### III.     STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at

570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

The defendants argue that Counts Six and Seven should be dismissed. The defendants contend that Count Six is barred by sovereign immunity. With respect to Count Seven, the defendants assert that Ucar's allegations fail to state a claim for intentional infliction of emotional distress ("IIED") and that, in any event, the individual defendants are protected by statutory immunity under section 4-165 of the Connecticut General Statutes.

### A. Count Six

The defendants argue that the Eleventh Amendment bars Ucar's state claim against the DOT in federal court. Ucar requests that the court dismiss Count Six without prejudice. Therefore, the court grants the defendant's Motion to Dismiss as to Count Six without prejudice. See Nodoushani v. S. Conn. State Univ., 507 Fed. App'x 79, 80 (2d Cir. 2013) (noting that claims barred by the Eleventh Amendment should be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 41(b) because district courts lack subject matter jurisdiction over such claims).

B.  Count Seven

Next, the defendants argue that Ucar's allegation fail to make out an IIED claim. Alternatively, they assert that section 4-165 of the Connecticut General Statutes makes the individual defendants immune from such a claim.

1.  Ucar's IIED Claims Against the Individual Defendants

To establish an IIED claim under Connecticut law, the plaintiff must establish four elements: (1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that this conduct caused the plaintiff's distress; and (4) that the plaintiff's emotional distress was severe. Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000). IIED claims can arise in continuing employment relationships. See Benton v. Simpson, 78 Conn. App. 746, 757 (2003). The second element is met only if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. Reasonably expected "vicissitudes of employment," such as insults, taunts, gossip, personality conflicts, bad manners, and the like, are insufficiently extreme and outrageous to state an IIED claim. See Craig v. Yale Univ. Sch. of Med., 838 F. Supp. 2d 4, 10 (D. Conn. 2011).

Construed in the light most favorable to Ucar, the allegations with respect to defendant McCann are sufficient to state an IIED claim. Ucar alleges that McCann "began a campaign of harassment against [him]," which included McCann calling Ucar a "cheater " and a "thief" for taking medical leave, mocking his English, and calling his

6

work "poor" in front of coworkers.  Am. Compl. ¶ 10.  Ucar also alleges that McCann filed paperwork related to Ucar's workers' compensation claim four months late, despite knowing that Ucar had been involved in a work-related car accident.  Id. ¶ 11.  Drawing all reasonable inferences in favor of Ucar, these allegations plausibly state an IIED claim.  Some of McCann's conduct, viewed in isolation, would surely be insufficient to state an IIED claim – especially McCann's comments about Ucar's "poor" work in front of others.  However, viewed as a whole, the allegations give rise to a reasonable inference that McCann publicly mocked Ucar and intentionally delayed (or attempted to prevent) Ucar's submission of a workers' compensation claim.

Ucar's allegations are also sufficient to state IIED claims against defendants Hill, Barakat, and Haggert.  With respect to these defendants, Ucar alleges the following.  Because Ucar is a Turkish Muslim, his coworkers accused him of "engaging in nefarious conduct as it relates to the backpack he carrie[d] to work every day."  Id. ¶ 20.  At a fact-finding hearing, Hill, Barakat, and Hagert referenced the Boston Marathon bombings and the attacks of September 11, 2001, and they maliciously expressed uncertainty or fear at what Ucar kept in his bag.  Id. ¶ 21.  Construing the allegations with all reasonable inference in Ucar's favor, these allegations state that the individual defendants maliciously demanded a hearing and made comments implying that Ucar was a terrorist – based only on his race and religion – when they knew (or should have known) that such conduct would cause Ucar emotional distress.  If Ucar can prove this to be the case, the individual defendants did not simply subject him to ordinary stresses of the work place:  they accused Ucar of being a dangerous terrorist simply to torment him because of his Islamic faith, his Turkish background, or both.

The court notes, however, that Ucar's allegations are thin.  Should the evidence show that the individual defendants only negligently caused Ucar emotional distress, his IIED claims will not survive.  See Perodeau v. City of Hartford, 259 Conn. 729, 762–63 (2002) (holding that negligent infliction of claims cannot arise in the context of a continuing employment relationship).

### 2. Statutory Immunity

Finally, the individual defendants' argument that they are immune from Ucar's IIED claims is without merit.  Section 4-165 of the Connecticut General Statutes provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Because the court has concluded that Ucar's allegations give rise to a reasonable inference that the individual defendant's acted intentionally, maliciously, or recklessly in causing Ucar emotional distress, see Part IV.B.1., supra, it would be inappropriate to dismiss the IIED claims based on section 4-165's statutory immunity.  See Le v. Connecticut Dep't of Transp., No. CV 980491121S, 1999 WL 619631, at *4 (Conn. Super. Ct. Aug. 4, 1999); see also Doe v. Wilson, No. 3:05-CV-482 (WWE), 2010 WL 598920, at *4 (D. Conn. Feb. 18, 2010).

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** in part and **GRANTS** in part the defendants' Motion to Dismiss (Doc. No. 25).  The court grants the Motion to Dismiss as to Count Six, without prejudice.  The court denies the Motion to Dismiss as to Count Seven.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 6th day of March, 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge