UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BERK UCAR, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:14-CV-0765 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT OF | : | |
| TRANSPORTATION, et al., | : | SEPTEMBER 11, 2017 |
| Defendants. | : | |

**RULING RE: MOTION IN LIMINE (DOC. NO. 25)**

## I. INTRODUCTION

Now before the court is the Motion in Limine to Exclude Witnesses filed by the defendants, the Department of Transportation for the State of Connecticut ("DOT"), James McCann, Rabih Barakat, Jon Hagert, and Scott Hill (collectively, the "defendants"). Motion in Limine to Exclude Witnesses ("MIL") (Doc. No. 122). The defendants seek to exclude or limit the testimony of Alireza Jamalipour ("Jamalipour"), Nihat Ozkan ("Ozkan"), Sarah Hoxha ("Hoxha"), Timothy McGuane ("McGuane"), David Tassavor ("Tassavor"). See id. at 1. The plaintiff, Berk Ucar ("Ucar"), opposes the Motion. See Mem. in Opp. to Defs.' Mot. in Limine ("Opposition") (Doc. No. 129).

For the reasons that follow, the Motion in Limine is **DENIED**.

## II. LEGAL STANDARD

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the

1

trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal quotation marks omitted). In deciding a motion in limine, the court must determine whether the evidence is admissible under Federal Rule of Evidence 104. See Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005). Potential evidence should be excluded only if it "is clearly inadmissible on all potential grounds." Ziemba v. Lynch, No. 3:11-cv-717 (SRU)(WIG), 2011 WL 4633117, at * 1 (D. Conn. Oct. 4, 2011) (citation omitted).

### III. DISCUSSION

The court will first consider the defendants' arguments regarding Ucar's comparators, and then turn to their arguments regarding the expected testimony of Jamalipour and Hoxha.

#### A. Comparators

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). In order to be similarly situated, the plaintiff must show that the two employees are similar "in all material respects." See id. This standard requires a showing that the co-employees "were subject to the same performance evaluation and discipline standards," and that the "employees who went undisciplined engaged in comparable conduct." Id. at 40.

##### 1. Ozkan and Jamalipour

The defendants first argue that Ozkan and Jamalipour should not be permitted to testify that other DOT employees regularly take longer and more frequent breaks than permitted by contract. See MIL at 2. They argue that these two witnesses are not similarly situated to Ucar in all material respects, and thus no inference of discrimination

can be drawn from their treatment. See id.; McGuiness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination"). The defendants argue that Ozkan and Jamalipour are not employed in the same position as Ucar and work in different units and have different supervisors from him, and therefore were not similarly situated in all material respects. Id. at 3–7 (citing Graham, 230 F.3d at 40 (2d Cir. 2000).

Ucar responds that he does not intend to offer Jamalipour or Ozkan as comparators themselves, but rather that they will testify as to what they have observed, not what they have experienced. See Opp. at 4–5. Ucar notes that the Second Circuit requires the plaintiff to show that his co-employees were subject to the same performance evaluation and discipline standards, and that those similarly situated employees were not punished when they engaged in comparable conduct. See id. at 5 (citing Graham, 230 F.3d at 40). Because Jamalipour and Ozkan are only being offered to testify as to their knowledge of how others were treated, that they are not similarly situated is not disqualifying and the court will not exclude them on this basis.

The defendants next argue that Jamalipour and Ozkan's testimony concerning the treatment of others should be excluded because they cannot identify any specific comparators who were similarly situated in all material respects. See Defs.' Reply to Pl.'s Opp. ("Reply") at 3–4. The cases the defendants cite are all in the context of summary judgment, when the court is considering what evidence the parties have

3

marshalled.  See id. (citing Desir v. B of Co-op. Educ. Servs., 803 F. Supp. 2d 168, 180–81 (E.D.N.Y. 2011); Fuentes v. Cablevision Sys. Corp., No. 14cv32(RRM)(CLP), 2016 WL 4995075, at * 7 (E.D.N.Y. Sept. 19, 2016)).  Here, the court is considering whether the testimony of the witnesses is admissible, not whether Ucar will ultimately succeed in proving his case.  Because Ucar is offering Jamalipour and Ozkan to testify as to their personal knowledge of how similarly situated employees were treated, their testimony appears to be admissible at this juncture.  Whether they have specific individuals about whom they have testimony goes to the weight of their testimony, not its admissibility.

The defendants also argue that Ozkan's and Jamalipour's lack personal knowledge and their testimony will be based on inadmissible hearsay.  See MIL at 10–12.  The defendants cite their deposition testimony that they only know of the facts of Ucar's case based on hearsay, and that they otherwise lack personal knowledge of the relevant facts.  See id.  The defendants also argue that Jamalipour should be prevented from testifying as to his opinions regarding defendant McCann's motivations because Jamalipour was not disclosed as an expert.  See id. at 13–15. Ucar responds that he does not intend to have these witnesses testify about the facts of the case.  See Opp. at 8.  Further, he does not intend to elicit testimony from Jamalipour regarding his beliefs or opinions about Ucar's treatment.  See id. at 8.  On this representation, this portion of the Motion in Limine is moot and is terminated as such without prejudice to renew

The Motion in Limine to exclude the testimony of Jamalipour and Ozkan is denied in part and terminated as moot in part.

4

2. Tassavor

The defendants next argue that Tassavor should not be permitted to testify about his experience working as a Muslim employee and his suspension in 2012–2013, because he is not similarly situated.  See MIL at 8.  They argue that Tassavor is not similarly situated because he holds a different position from Ucar, and has different supervisors.  See id.  Ucar responds that Tassavor's direct supervisor, Robert Zaffetti, was the same man who reported Ucar to his supervisor for using the gym in the morning, and that both Tassavor's chain of command included defendant Scott Hill.  See Opp. at 6–7.  The defendants also argue that Tassavor stated that he does not practice Islam nor does he believe he was disciplined because of his religion or national origin.  See MIL at 8–9.  This argument goes to the weight to afford Tassavor's testimony because it is the province of the jury to determine if Tassavor was or was not disciplined for discriminatory reasons such that his experience is probative of Ucar's claim of discrimination.  It does not go to the admissibility of the testimony, because "[w]here two employees are similarly situated ordinarily presents a question of fact for the jury."  Graham, 230 F.3d at 39.

Next, the defendants argue that Tassavor did not engage in comparable conduct and therefore is not a suitable comparator.  See MIL at 9–10.  Tassavor was alleged to have engaged in misconduct for talking with a consultant during a test administered by the National Highway Institute in 2012, which led the teacher to think he was cheating.  See MIL at 10.  He also was disciplined in 2014 for sending his son's resume to a DOT contractor through the state email system.  See id.  The defendants argue that this conduct is not comparable to being caught using the gym on state time.  Id.  Ucar

responds that the jury could find that the conduct was comparable, and that another witness (McGuane) will testify that, in his view, it is comparable. See Opp. at 6.

The court agrees that Tassavor's testimony is admissible because it is the province of the jury to determine whether two employees are similarly situated and their conduct comparable, and Tassavor and Ucar are not so clearly dissimilar as to render Tassavor's testimony irrelevant or inadmissible. See Graham, 230 F.3d at 39.

The Motion in Limine to exclude Tassavor is denied.

B. Opinions of McGuane

The defendants argue that McGuane's beliefs about Tassavor's treatment is mere speculation, and thus it should be excluded. See MIL at 16. They cite to the fact that Tassavor testified that his union representative was a different woman, and that McGuane's involvement was "[n]othing." See id. Ucar responds that McGuane does have personal knowledge because he was aware of the events and was involved in Tassavor's discipline. It is premature for the court to rule on whether McGuane does or does not have personal knowledge to support his testimony regarding Tassavor—that question is best reserved for during trial. The court denies this portion of the Motion in Limine without prejudice to renew.

The defendants also argue that McGuane cannot testify regarding Ucar's treatment as compared to others because it is improper lay testimony. See Reply at 6. Rule 701 of the Federal Rules of Evidence allows a witness not testifying as an expert to offer testimony in the form of an opinion if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge

6

within the scope of Rule 702." Fed. R. Evid. 701. McGuane's testimony regarding Ucar's discipline as compared to others who had similar infractions and similar fact-finding processes could be helpful to the jury in determining whether Ucar was disciplined disproportionately, and may be based on his personal knowledge. See id. at (a)–(b).

The fact that McGuane has specialized knowledge does not prevent him from testifying pursuant to Rule 701, so long as he is testifying based on his own personal knowledge and is not rooted exclusively in his expertise as a union representative. See Bank of China v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004). The court cannot say that McGuane's offered testimony would be improper lay testimony, as it remains to be seen whether his testimony would be based on his personal experience or his expertise as a union representative.

Thus, at this point, the court declines to exclude all opinion testimony of McGuane. If the plaintiffs attempt to elicit improper expert opinion testimony from McGuane, the defendants should make their objection known. Defendants' Motion in Limine is denied without prejudice to renew.

### C. Hoxha and Jamalipour

Finally, the defendants argue that the testimony of Jamalipour and Sarah Hoxha regarding Ucar's emotional distress should be excluded under Rule 403. See MIL at 16. Specifically, the defendants argue that Jamalipour's testimony should be excluded because it is cumulative of Ucar's testimony and his service provider's expected testimony. They also argue that it will be unfairly prejudicial, without any explanation of what portion of the testimony they believe will unfairly prejudice the defendant. See MIL

at 16–17.  Ucar responds that each of the witnesses he plans to call regarding his emotional distress will offer different evidence and perspectives, and thus their testimony is not cumulative.  See Opp. at 10.

The court agrees that the plaintiff is entitled to offer different perspectives on Ucar's emotional distress, and that Jamalipour's observation of Ucar's condition is an appropriate part of his case that is not "unfairly" prejudicial.  Because the court is not to exclude evidence under Rule 403 unless the probative value is <u>substantially outweighed</u> by the danger of needlessly presenting cumulative evidence or unfair prejudice, the court will not prevent Jamalipour from testifying.  Fed. R. Evid. 403.

Hoxha is Ucar's wife.  While the events in question occurred during 2012–2013, the Ucar and Hoxha met in November or December 2013.  See MIL at 17.  The defendants argue that, based on this timeline, Hoxha should not be permitted to testify as to his emotional distress because her testimony would not be based on her personal knowledge, and that she only knows that any emotional distress is related to his work because of hearsay.  See id. at 17–18.  Ucar responds that these arguments are not about admissibility but rather about weight.  See Opp. at 11.  He argues that Hoxha can testify about the ways his emotional distress has manifested physically, and that these manifestations continued through their courtship and marriage.  See id. at 10.  The court agrees that the defendants' arguments go to the weight the jury should afford Hoxha's testimony, not its probative value.  However, Hoxha must be sure that her statements remain based on her personal knowledge and are not based on hearsay.

The defendants' Motion in Limine as to Jamalipour and Hoxha's testimony regarding Ucar's emotional distress is denied without prejudice to renew if the testimony becomes cumulative or otherwise not admissible (e.g. hearsay).

IV. **CONCLUSION**

For the foregoing reasons, the defendants' Motion in Limine (Doc. No. 122) is **DENIED IN PART** and **TERMINATED AS MOOT IN PART**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 11th day of September, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge